UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

VILENA NICHOLE ANSLEY,

  Plaintiff,　　　　　　　　　　　　CASE NO.:

-VS-

COMCAST CORPORATION,

  Defendant.
_____/

## **COMPLAINT**

COMES NOW Plaintiff, VILENA NICHOLE ANSLEY, by and through the undersigned counsel, and sues Defendant, COMCAST CORPORATION, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA").

## **INTRODUCTION**

1.  The TCPA was enacted to prevent companies like COMCAST CORPORATION, from invading American citizen's privacy and to prevent abusive "robo-calls."

2.  "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3.  "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious. Most members of the public want to limit calls, especially cellphone calls, to family and acquaintances, and to get their political information (not to mention their advertisements) [*6] in other ways." *Patriotic Veterans v. Zoeller*, No. 16-2059, 2017 U.S. App. LEXIS 47, at *5-6 (7th Cir. Jan 3, 2017).

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

8. The alleged violations described herein occurred in Walton County, Georgia. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

**FACTUAL ALLEGATIONS**

9. Plaintiff is a natural person, and citizen of the State of Georgia, residing in Monroe, Walton County, Georgia.

10. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

11. Defendant is a corporation with its principal place of business located at 1701 JFK Boulevard, Philadelphia, PA 19103, and which conducts business in the State of Georgia.

12. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (470) *** - 3221, and was the called party and recipient of Defendant's hereinafter described calls.

13. Defendant placed an exorbitant number of automated calls and text messages to Plaintiff's cellular telephone (470) *** - 3221 in an attempt to collect an alleged debt belonging to an unknown individual.

14. On several occasions over the last four (4) years Plaintiff instructed Defendant's agent(s) to stop calling her cellular telephone.

15. Upon receipt of the calls and text messages from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number: (800) 266-2278; and when that number is called, an automated message plays stating: "Welcome to Comcast, home of Xfinity. Para Español, marque el nueve…."

16. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or

prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received, and because when she answered a call from the Defendant she would hear either an extended pause before a representative would come on the line, or a pre-recorded message instructing her to hold the line for the next available agent/representative.

17. Furthermore, some or all of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

18. None of Defendant's telephone calls nor text messages placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

19. Plaintiff does not currently have any account or business relationship with Defendant.

20. In or about July of 2016, Plaintiff answered a call from Defendant to her aforementioned cellular telephone number, met with an automated message, held the line, was eventually connected to a live representative, and informed an agent/representative of Defendant that she was not the unknown male individual for whom they were calling, that the constant calls and text messages were harassing, and demanded that they cease placing calls and sending text messages to her aforementioned cellular telephone number.

21. During the aforementioned July of 2016 phone call with Defendant, Plaintiff unequivocally revoked any express consent Defendant may have mistakenly believed they had for placement of telephone calls and text messages to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

22. Each and every subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

23. Each and every subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

24. Each and every subsequent text message the Defendant sent to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

25. Each and every subsequent text message the Defendant sent to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

26. Additionally, in or about April of 2017, due to continued automated calls and text messages to her aforementioned cellular telephone number from the Defendant, Plaintiff again answered a call from Defendant, met with an automated message, held the line and was eventually connected to a live representative, and informed the agent/representative of Defendant that she had previously demanded that they not call or text her cellular phone, and again demanded that Defendant cease placing calls and sending text messages to her aforementioned cellular telephone number.

27. Further, on several occasions, due to continued text messages to her aforementioned cellular telephone number from the Defendant, Plaintiff responded to a text message and effectively demanded that Defendant stop sending text messages to her aforementioned cellular telephone number by replying "STOP."

28. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling and texting the Plaintiff despite the Plaintiff informing Defendant that she was not the individual for whom they were calling.

29. During one conversation with Defendant's agent, Plaintiff instructed Defendant that once again she was not the unknown male individual for whom Defendant was seeking and did not know said person. Defendant's agent responded that they would call the number on file to confirm with the unknown male individual as to whether the number was valid or not. Plaintiff informed Defendant that such an action wouldn't do any good as it was quite apparent the number on file for the unknown male individual was Plaintiff's, and she had already instructed Defendant many times that she is not, nor does not know the unknown male individual and to stop calling, to which Defendant's agent responded not to worry, that the situation would be taken care of. Within a few minutes of hanging up, Plaintiff received a subsequent call from Defendant wherein said agent left a voice message to the effect that said agent had just spoken with a woman who claimed the phone number on file did not belong to the unknown male individual and requested said unknown individual call Defendant back to confirm whether or not the called number belonged to the unknown individual.

30. On at least four (4) separate occasions, Plaintiff has either answered a call from Defendant or returned a text message to Defendant, and demanded that Defendant cease placing calls and sending text messages to her aforementioned cellular telephone number.

31. Defendant has placed approximately five hundred (500) calls and texts to Plaintiff's aforementioned cellular telephone number. The exact number of calls will be established after a thorough review of Defendant's records.

32. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to call individuals, just as it did to the Plaintiff's cellular telephone in this case.

33. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as it did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendant, to remove the number.

34. Defendant's corporate policy is structured so as to continue to call individuals like, Plaintiff; despite these individuals explaining to Defendant they wish for the calls to stop.

35. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

36. Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

37. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

38. Defendant's corporate policy provided no means for the Plaintiff to have her number removed from the call list.

39. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called.

40. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

41. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

42. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant call.

43. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. Plaintiff had to waste time to deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

44. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

45. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

46. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

47. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services

48. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, anxiety, and aggravation.

## COUNT I
### (Violation of the TCPA)

49. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-eight (48) as if fully set forth herein.

50. Defendant willfully violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that she was not the individual for whom the Defendant was calling and wished for the calls to stop.

51. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant COMCAST CORPORATION for statutory damages, punitive

damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

                              Respectfully submitted,

                              ***/s/ Octavio Gomez***
                              OCTAVIO GOMEZ, ESQUIRE
                              Georgia Bar No. 617963
                              MORGAN & MORGAN, TAMPA, P.A.
                              201 N. Franklin Street, Suite 700
                              Tampa, FL 33602
                              Telephone:  (813) 223-5505
                              Email: TGomez@ForThePeople.com
                              Secondary: JPlaceres@ForThePeople.com
                              *Attorney for Plaintiff*